Box *v.* Love, Superintendent of Banks, *et al.*

(Division A. April 22, 1929.)

[121 So. 850. No. 27807.]

*J. H. Ford,* of Houston, for appellant.

*Robt. Burns, Jr., F. W. Bradshaw,* and *Flowers, Brown & Hester,* all of Jackson, for appellees.

Cook, J., delivered the opinion of the court.

Appellant sold and delivered to the Philip J. Toomer Lumber Company certain pine lumber for the agreed price of four hundred fifty-three dollars and sixty-three. cents, and thereafter, doubt having arisen in regard to appellant's title to and right to sell said lumber, the lumber company failed and refused to pay appellant therefor. Thereupon, appellant filed this suit in the circuit court of Chickasaw county against the Philip J. Toomer Lumber Company, and sued out a writ of summons and seizure to enforce the purchase-money lien on said lumber. The defendant lumber company filed its answer, admitting liability for the purchase price of the lumber and its readiness to pay and dispose of said sum as the court might direct, and suggesting that J. S. Love, superintendent of banks in charge of the Bank of Houston, then in liquidation, and the Hill-Behan Lumber Company had claims against said purchase money, and requested that said claimants be summoned to appear and assert or relinquish their claims. The court then entered an order directing the Philip J. Toomer Lumber Company to pay said sum into court, which was accordingly done, and also directing that said J. S. Love, superintendent of banks, in charge of the Bank of Houston then

in liquidation, and the Hill-Behan Lumber Company, be summoned to propound their claims. In response to the summons issued for these claimants, the superintendent of banks in charge of the liquidation of the Bank of Houston appeared and filed his answer asserting that the appellant did not own the lumber which he delivered to the Philip J. Toomer Lumber Company, but that it belonged to the Bank of Houston then in liquidation, and filed, as an exhibit to his pleading, a copy of a bill of sale from Charles C. Hampton, the former owner of said lumber, from whom the appellant claimed to have purchased it; this bill of sale being dated April 12, 1927, and reciting that it was subject to a prior bill of sale of said lumber to the Hill-Behan Lumber Company to secure it in the payment of approximately seven hundred dollars. The Hill-Behan Lumber Company appeared and filed its claim asserting that the lumber in question was not the property of appellant when he contracted to sell it, but was the property of said intervener and the Bank of Houston in liquidation, and attached, as exhibits to its claim, copies of three bills of sale from the former owners covering one hundred twenty thousand nine hundred four feet of lumber of which the lumber sold by the appellant was alleged to be a part. These bills of sale to the Hill-Behan Lumber Company were dated October 26, November 6, and November 13, 1926, respectively. Appellant filed a traverse of the pleas or claims of the respective intervenors, and, at the conclusion of the evidence offered at the trial, the court granted a peremptory instruction in favor of the claimants, and from the judgment entered this appeal was prosecuted.

In support of the action of the court below in directing a verdict for the claimants, the appellees contend there was a total failure of proof to show that any valuable consideration was paid by appellant for the lumber in question, but concede that as to whether or not the ap-

pellant actually purchased the lumber from Hampton without notice of any prior claims and in good faith, the evidence was conflicting, and that if there was, in fact, any evidence to support a finding that there was any consideration for the alleged sale, then the cause should have been submitted to the jury for a decision of the controverted questions of fact.

The proof shows that on the 28th day of September, 1926, the appellant sold and conveyed to C. C. Hampton a certain sawmill plant, including all right and title to the land on which said plant and the lumber yards connected therewith were located, at and for the sum of seven thousand five hundred dollars to be paid in weekly installments, and also the assumption of a balance of one hundred ninety-two dollars due on certain machinery conveyed, and the conveyance executed provided that the payments on the purchase price should be made at the Houston State Bank of Houston, Mississippi, and should be applied by said bank to the indebtedness and lien held by it on said property, and contains the following recital.

"It is understood and agreed between the parties hereto that a vendor's lien be and the same is hereby retained on the property hereby conveyed, conditioned for the prompt payment of the consideration of said seven thousand five hundred dollars and the one hundred ninety-two dollars above mentioned, and should the grantee or party of the second part herein fail to make said payments when due, then said payments made by the party of the second part, up to his failure, shall be considered and taken without question as a rental on the above described property, and the party of the first part shall have the right to repossess said property under said lien herein retained."

Appellant testified that said Hampton paid something like one thousand five hundred dollars on the purchase price of this sawmill plant, and that on February 17,

1927, said Hampton being indebted to him in the sum of four hundred fifty-seven dollars, he instituted an attachment suit against Hampton for said sum; that afterwards Hampton approached him with a view to settling the indebtedness for which he had filed the attachment suit, and that it was agreed between them that he (Hampton) would sell and deliver to appellant this lumber in settlement of the attachment suit, and that he (appellant) would take back the sawmill plant in settlement of the balance of the purchase price thereof. In testifying in regard to the indebtedness of four hundred fifty-seven dollars which he claimed Hampton owed him at the time of this settlement, and the alleged purchase of the lumber, appellant, several times, designated it as "rent" for the mill plant, and appellees contend that the original conveyance between appellant and Hampton for the sale of the mill plant was an absolute conveyance in fee, with a vendor's lien reserved under it, and that no rent could or did accrue, and therefore there was no indebtedness due by Hampton to appellant at the time of the alleged sale of the lumber, and no consideration to support such sale.

Conceding, but for the purpose of this decision only, that the appellees are correct in their contention that no rent for the use of the mill plant could accrue under this contract or conveyance, still we are of the opinion that under the proof in this record, the question of whether or not there was a consideration, in the form of an indebtedness due appellant by Hampton, for the alleged sale, should have been, along with the other controverted questions of facts, submitted to the jury. In the redirect examination of the appellant, he testified as follows:

"Q. You said a moment ago that you and Mr. Hampton did contract by him turning the property back to you and you taking it in settlement of his debt, state to the jury how much it was agreed Mr. Hampton owed you at that

time? A. He owed me about six thousand four hundred dollars.

"Q. When you agreed that you would take the machinery back, how much did that leave him owing you? A. That balanced all the accounts.

"Q. Before you got the lumber? A. That did away with the lawsuits and put us back like we begun when he sold me the lumber.

"Q. Up to the time he sold you the lumber, how much did he still owe you—you taking the mill back, how much did he still owe you for which he sold you the lumber? A. He owed me four hundred fifty-seven dollars difference. That was back payments on the mill."

While appellant's testimony is not entirely clear as to how he arrived at the amount of this alleged indebtedness, we interpret the testimony quoted above to mean that the four hundred fifty-seven dollars was past-due purchase money for the mill plant which was paid by the sale of lumber of that value, while, by agreement of the parties, the remainder of the purchase price of the mill plant was discharged by appellant repossessing the plant. There was some conflict in the evidence as to whether the lumber here in question had been delivered to the claimants and tagged by them with placards or tags indicating their ownership thereof prior to the alleged sale to the appellant, and, upon the whole evidence, we think the questions of whether or not Hampton was indebted to the appellant at the time of the alleged sale of the lumber, and whether or not said lumber was, in fact, sold to the appellant to discharge this indebtedness, were questions of fact which should have been submitted to the jury along with other controverted questions of fact.

Without objection on the part of the appellees, the court below peremptorily directed a verdict in favor of the appellant for the purchase price of a small quantity of oak lumber involved in the suit, and from the judg-

ment in his favor for that sum, there was no appeal. The judgment of the court below will therefore be reversed only in so far as it awarded a recovery in favor of the claimants, and the cause will be remanded.

*Reversed and remanded.*